**THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| ADAPTIX, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action 6:12-cv-017-RWS-CMC |
| v. | ) | |
| | ) | |
| AT&T MOBILITY LLC, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PANTECH WIRELESS, INC., et al. | ) | |
| | ) | Civil Action 6:12-cv-020-RWS-CMC |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS, et al. | ) | Civil Action 6:12-cv-120-RWS-CMC |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

**DEFENDANTS' RESPONSE TO ADAPTIX'S RULE 72 OBJECTIONS
REGARDING SUMMARY JUDGMENT ON PRECLUSION GROUNDS**

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     UNDISPUTED MATERIAL FACTS ............................................................... 2

III.    STANDARD OF REVIEW ................................................................................ 3

IV.     ARGUMENT ...................................................................................................... 4

       A.      JUDGE CRAVEN CORRECTLY RECOMMENDED THAT RES
            JUDICATA BARS ADAPTIX'S CLAIMS AGAINST AT&T AND
            VERIZON. .................................................................................................. 4

            1.      There Has Been No "Acquiescence." ....................................... 4

            2.      The AIA Has No Bearing on the Application of Res Judicata ................. 6

            3.      There Is No Temporal Limitation on Res Judicata .................................. 7

       B.      JUDGE CRAVEN CORRECTLY RECOMMENDED THAT THE
            KESSLER DOCTRINE BARS ADAPTIX'S CLAIMS AGAINST AT&T
            AND VERIZON .......................................................................................... 9

       C.      JUDGE CRAVEN CORRECTLY RECOMMENDED THAT
            COLLATERAL ESTOPPEL BARS ADAPTIX FROM RELITIGATING
            DIRECT INFRINGEMENT OF THE METHOD CLAIMS AGAINST
            ALL DEFENDANTS .................................................................................. 12

       D.      JUDGE CRAVEN CORRECTLY RECOMMENDED THAT—
            BECAUSE THE CARRIERS AND THEIR CUSTOMERS DO NOT
            DIRECTLY INFRINGE—LG AND PANTECH CANNOT
            CONTRIBUTORILY INFRINGE .............................................................. 13

V.      CONCLUSION ................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)................................................................................................4

*Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*,
  672 F3d 1335 (Fed. Cir. 2012).................................................................................9

*Brain Life, LLC v. Elekta Inc.*,
  746 F.3d 1045 (Fed. Cir. 2014)........................................................................ *passim*

*Bridas SAPIC v. Government of Turkmenistan*,
  345 F. 3d 347 (5th Cir. 2003) ...............................................................................13

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)................................................................................................4

*Douglass v. United Servs. Auto. Ass'n*,
  79 F.3d 1415 (5th Cir. 1996) (en banc) ................................................................13

*Eason v. Thaler*,
  73 F.3d 1322 (5th Cir. 1996) ..................................................................................4

*Foster v. Hallco Mfg. Co.*,
  947 F.2d 469 (Fed. Cir. 1991)..............................................................................7, 9

*Guerro v. Katzen*,
  774 F.2d 506 (D.C. Cir. 1985)...............................................................................14

*Int'l Nutrition Co. v. Horphag Research, Ltd.*,
  220 F.3d 1325 (Fed. Cir. 2000).............................................................................14

*Jacobs Wind Elec. Co. v. Florida Dep't of Transp.*,
  919 F.2d 726 (Fed. Cir. 1990).................................................................................9

*Kessler v. Eldred*,
  206 U.S. 285 (1907)....................................................................................... *passim*

*Lindquist v. City of Pasadena Texas*,
  669 F. 3d 225 (5th Cir. 2012) ...............................................................................13

*Mario v. P&C Food Markets, Inc.*,
  313 F.3d 758 (2nd Cir. 2002)................................................................................13

*Mentor Graphics Corp. v. EVE-USA, Inc.*,
No. 3:10-CV-954-MO, 2014 WL 2533336 (D. Or. June 4, 2014) ...........................................9

*Molinaro v. Am. Tel. & Tel. Co.*,
460 F.Supp. 673 (E.D. Pa. 1978) ....................................................................................10, 11

*Newell Companies, Inc. v. Kenney Mfg. Co.*,
864 F.2d 757 (Fed. Cir. 1988)..............................................................................................9

*Novartis Pharm. Corp. v. Eon Labs Mfg.*,
363 F.3d 1306 (Fed. Cir. 2004)...........................................................................................13

*Nystrom v. Trex Co., Inc.*,
580 F.3d 1281 (Fed. Cir. 2009).................................................................................7, 8, 9, 14

*Oreck Direct, LLC v. Dyson, Inc.*,
560 F.3d 398 (5th Cir. 2009) .............................................................................................4, 7

*Ragas v. Tenn. Gas Pipeline Co.*,
136 F.3d 455 (5th Cir. 1998) ................................................................................................4

*Rubber Tire Wheel Co. v. Goodyear Tire & Rubber Co.*,
232 U.S. 413 (1914)............................................................................................................12

*Russell v. SunAmerica Sec., Inc.*,
962 F.2d 1169 (5th Cir. 1992) .............................................................................................14

*Shoom, Inc. v. Electronic Imaging Sys. of Am., Inc.*,
2011 WL 4595212 (N.D. Cal. Oct. 4, 2011)........................................................................12

*SpeedTrack, Inc. v. Office Depot, Inc.*,
2014 WL 1813292 (N.D. Cal. May 6, 2014) ..................................................................10, 15

*In the Matter of Super Van*,
92 F.3d 366 (5th. Cir. 1996) .............................................................................................4, 5

*Young Eng'rs, Inc. v. U.S. Int'l Trade Comm'n*,
721 F.2d 1305 (Fed. Cir. 1983)............................................................................................8

**Statutes**

Fed. R. Civ. P. 56(c) ...........................................................................................................4

Fed. R. Civ. P. 72..................................................................................................... 1, 3, 13

Fed. R. Civ. P. 72(b)(2).......................................................................................................13

Fed. R. Civ. P. 72(b)(3).......................................................................................................3

**Other Authorities**

Restatement (Second) of Judgments § 26(1)(a) (1982) ....................................................................5

Defendants AT&T Mobility LLC ("AT&T"), Cellco Partnership d/b/a Verizon Wireless ("Verizon"), LG Electronics, Inc., LG Electronics U.S.A., Inc. (collectively, "LG"), and Pantech Wireless, Inc. ("Pantech") (collectively "Defendants") hereby respond to the Rule 72 Objections filed by Adaptix, Inc. ("Adaptix") objecting to the May 12, 2015 Report and Recommendation regarding Defendants' Motion for Summary Judgment on Preclusion Grounds ("R&R").

## I.      INTRODUCTION

Over the past three years, Adaptix has serially filed over 70 cases in multiple "waves" of litigation in this Court and the Northern District of California, alleging that LTE device manufacturers and their respective wireless carriers infringe U.S. Patents 7,454,212 ("the '212 patent") and 6,947,748 ("the '748 patent") (collectively the "asserted patents").  Adaptix lost the first wave of cases in the Northern District of California: on February 2, 2015, that court entered final judgment against Adaptix after granting summary judgment of non-infringement in favor of, among others, defendants AT&T and Verizon (collectively "the carriers").

This suit presents the same infringement claims brought on the same basis—AT&T's and Verizon's sale of 4G LTE devices (*e.g.*, smartphones).  In the first wave of California cases, the 4G LTE devices were Apple and HTC devices.  Here, they are LG and Pantech devices.  But in all cases the accused functionality, which is defined in the 3GPP LTE industry standard, is *exactly* the same, regardless of which company manufactured the device.  Adaptix admits this. That fact has three profound implications for the present cases, as Judge Craven correctly found in her R&R.

First, res judicata (claim preclusion) and the *Kessler* Doctrine each independently bar Adaptix's infringement claims—for both direct and contributory infringement—in the present cases against the carriers (AT&T and Verizon).  Second, collateral estoppel (issue preclusion) bars Adaptix from arguing that any Defendant—carrier or manufacturer—directly infringes the method claims of the '212 and '748 patents.  Third, Adaptix's contributory infringement claims against LG and Pantech (the "manufacturers") should be dismissed as a matter of law.

Adaptix fully argued in the Northern District of California that the 4G LTE devices sold by AT&T and Verizon infringe its patents.  Adaptix lost.  Adaptix should not be allowed to argue in the Eastern District of Texas that the additional 4G LTE devices sold by AT&T and Verizon infringe those very same patents for the very same reasons.  Under controlling law, it is irrelevant that the 4G LTE devices in the California cases were Apple and HTC devices, instead of LG and Pantech devices.

Adaptix should not be permitted to bring the same case over and over again every time a new 4G LTE device is released, when Adaptix itself has repeatedly emphasized that the accused functionality is the same in every 4G LTE device.  That would force AT&T and Verizon into a never-ending carousel of litigation, with Adaptix suing over and over again using the same patents and accusing the same 4G LTE standard technology.  And it would unnecessarily burden the federal courts, which will face duplicative claims in suit upon suit, each independently consuming the resources of an entirely new and independent patent case involving the same set of facts and circumstances.

## II.      UNDISPUTED MATERIAL FACTS

In its Objections, Adaptix did not dispute the following material facts.

*Multiple suits*.  In 2012, Adaptix filed multiple suits against AT&T and Verizon asserting infringement of its patents.  In each suit, Adaptix paired AT&T or Verizon with a different handset manufacturer (*e.g.*, Apple, HTC, LG, or Pantech).  *See, e.g.*, Dkt. 1 in EDTX Case Nos. 6-12-cv-017, -019, -020, -120, -121, -124, -125.[1]  The cases involving Apple and HTC (paired with AT&T or Verizon) were transferred to the Northern District of California.  *See* NDCA Case Nos. 5:13-cv-01776, -1777, -1778, -1844, and -2023 (collectively the "California cases").

*Adaptix lost in California*.  On January 20, 2015, the Northern District of California granted summary judgment that AT&T and Verizon did not directly infringe either of Adaptix's patents (the '212 or the '748 patent).  *See, e.g.*, 1777 Case, Dkt. 477; 2023 Case, Dkt. 449.  The

---

[1] Unless otherwise stated, all docket cites are to the -017 case.

California court entered final judgment on February 2, 2015.  1777 Case, Dkt. 489; *see also* 1776 Case, Dkt. 419; 1778 Case, Dkt. 416; 1844 Case, Dkt. 384; 2023 Case, Dkt. 461.

*Remaining claims here*.  The only remaining asserted patent claims in the present cases are method claims 1, 8, 12, and 15 of the '212 patent.  These method claims are a subset of the patent claims on which the California court granted summary judgment of non-infringement. *See, e.g.*, -1776 Dkt. 405 at 4.

*Adaptix's infringement claim is identical in all cases*.  In all its cases, in both Texas and California, Adaptix is pursuing the same infringement theory, namely, that the accused devices operating on the accused carrier networks allegedly infringe through their use of Mode 3 CQI reporting as defined in the 3GPP LTE industry standard.[2]  Adaptix has repeatedly stated that its infringement claims are based entirely on functionality defined in the 3GPP LTE standard.  *See* -120, Dkt. 124 [2013-07-29 Adaptix Brief] at 4; -120, Dkt. 80 [2013-05-06 Adaptix Brief] at 2 n.3; -120, Dkt. 108 [2013-07-01 Adaptix Brief] at 4; 5:13-cv-1776, 2013-10-09 Hearing Tr. at 7. It is undisputed that the accused Mode 3 functionality is implemented by a Qualcomm baseband chip, which Adaptix asserts is the smallest salable patent practicing component of the accused devices.  *See* -120, Dkt. 300 at 5 & Dkt. 305 at 3; *see also* Dkt. 213 (stipulation regarding representative baseband chip).  Adaptix's infringement expert confirmed that his theories of infringement are the same regardless of manufacturer.  Ex. 3 to the Decl. of Chachkes (9/12/14 Caloyannides Tr. at 246:13-21); *see also id*. at 248:15-249:1 and Ex. 4 to the Decl. of Chachkes (9/13/2014 Caloyannides Tr. at 7:23-8:3).

**III.   STANDARD OF REVIEW**

Under Fed. R. Civ. P. 72, the district judge must review de novo any part of the magistrate judge's disposition that has been properly objected to.  Fed. R. Civ. P. 72(b)(3).

---

[2] *Compare*, *e.g.*, Ex. 1 to the Declaration of Alex V. Chachkes in support of Defendants' Response to Adaptix's Rule 72 Objections ("Decl. of Chachkes") (Ex. A to 1/31/2014 Infringement Contentions for the '212 patent served on AT&T in the -2023 case) *with* Ex. 2 to the Decl. of Chachkes (Ex. A to 7/18/2014 Infringement Contentions for the '212 patent served on AT&T in the -017 case).

Summary judgment is appropriate when the pleadings, discovery and disclosure materials on file, and affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-325 (1986); *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  An issue of material fact is genuine if the evidence could lead a reasonable jury to find for the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Mere conclusory allegations, unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence.  *See Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).  Summary judgment must be granted if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial.  *See Celotex*, 477 U.S. at 322–34.

## IV.  ARGUMENT

### A.  JUDGE CRAVEN CORRECTLY RECOMMENDED THAT RES JUDICATA BARS ADAPTIX'S CLAIMS AGAINST AT&T AND VERIZON.

Under res judicata, also referred to as claim preclusion, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  *Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 401 (5th Cir. 2009) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)).  Adaptix argues that res judicata does not apply for three reasons.  Each argument fails.

#### 1.  There Has Been No "Acquiescence."

First, Adaptix asserts that the carriers "acquiesced" to being sued in multiple, collateral suits, such that res judicata would not apply.  Judge Craven, however, correctly determined that Adaptix's acquiescence arguments fail.  *See* R&R at 21-24.

Adaptix relies on only one Fifth Circuit case, *In the Matter of Super Van*, 92 F.3d 366, 371 (5th. Cir. 1996).  There, the first suit "alleged four causes of action . . . centered around the City's failure to grant [plaintiff's] application for a charter permit and interference with its

*charter* business." *Id*. at 368 (emphasis added).  The second suit focused on plaintiff's "complaints of interference with its *shuttle* business, and it relie[d] on claims of long-term animosity between" plaintiff and defendants.  *Id.* at 369 (emphasis added).  In light of this, the *Super Van* Court, *sua sponte*, raised the issue of whether the cases should be consolidated.  *Id.* Both sides argued that the suits should be maintained and prosecuted separately, because the suits involved different substantive issues.  *Id*.  Because of this, upon the resolution of one, the court determined that defendants acquiesced to the separate prosecution of the other.  *Id*. at 371.

Here, by contrast, the California and Texas actions involved *identical* causes of action against the carriers.  More importantly, here, the carriers never affirmatively expressed a desire to have the California and Texas actions prosecuted separately.  Adaptix cannot and does not suggest that either carrier made such an express reservation.  Indeed, the carriers even moved to stay this action in view of other Adaptix cases because of potential "*res judicata* issues."  *See* Dkt. 120 (Defendants' Motion to Stay) at 6 (emphasis added).  Similarly, in the California cases, the carriers based their motions for attorneys' fees in part on the unnecessary number of actions brought against them by Adaptix, a fact that Judge Craven recognized in rejecting Adaptix's "acquiescence" argument.  The carriers' briefing even included a section entitled "Adaptix Unnecessarily Filed Duplicative Lawsuits Against Defendants."  *See* -1777, Dkt. 546 at 22.

Adaptix also cites the Restatement (Second) of Judgments § 26(1)(a) (1982).  But the Restatement is not controlling law.  Nor does it support Adaptix's position.  The Restatement illustrates the narrow circumstances under which a party should be deemed to have consented to multiple suits, addressing the different forms of liability that can arise from the same underlying event:

> Illustration: 1. After a collision in which A suffers personal injuries and property damage, A commences in the same jurisdiction one action for his personal injuries and another for the property damage against B. B does not make known in either action his objection (usually called "other action pending") to A's maintaining two actions on parts of the same claim. After judgment for A for the personal injuries, B requests dismissal of the action for property damage on the ground of merger. Dismissal should be refused as B

consented in effect to the splitting of the claim.

*Id.*  Thus, the Restatement contemplates an exception to the normal rule where a plaintiff maintains one action for *personal injuries* and another for *property damages*.  The Restatement's discussion does not contemplate the fact pattern here, where a plaintiff loses on a liability issue and then continues another action that would decide *exactly the same tort*.  That result would contravene the entire purpose of res judicata.  *See* Decl. of Chachkes, Ex. 5 *(*4/14/15 Hrg. Tr. at 13, 51).  Additionally, the Restatement hypothetical stands only for the proposition that a *prevailing* plaintiff may continue to pursue a second lawsuit against an acquiescing defendant. Here, Adaptix lost in the first suit and is not entitled to a second bite at the apple.

### 2.      The AIA Has No Bearing on the Application of Res Judicata.

Next, Adaptix argues that the America Invents Act (the "AIA") forced it to file multiple lawsuits against each of the carriers.  This is simply not true.  What Adaptix means to say is that it could not have sued multiple *manufacturers* (e.g., LG, Pantech, Apple, and HTC) in a single suit without their consent.  But it is the *carriers*, not the manufacturers who are invoking res judicata here.  And nothing in the AIA prevented Adaptix from bringing all of its claims against AT&T in a single action, for all accused 4G LTE devices.  Similarly, nothing in the AIA prevented Adaptix from bringing all of its claims against Verizon in a single action, for all accused 4G LTE devices.  *Indeed, that is precisely what Adaptix did in a recent case involving a related patent*.  *See, e.g.*, 6:15-cv-45 (E.D. Tex.), Dkt. 18 at ¶ 10 (alleging infringement by Verizon involving 4G LTE devices manufactured by Apple, LG, HTC, Sony, Kyocera, and others); Dkt. 18 at ¶ 10 (similar allegations in case against Verizon).  Thus, Judge Craven correctly concluded that the AIA did not force Adaptix to file multiple lawsuits against each of the carriers.  *See* R&R at 21 n.8.

Even if Adaptix's assertion regarding the AIA were correct, it would be irrelevant.  Res judicata applies where four elements have been satisfied, as is the case here:  (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the

same claim or cause of action was involved in both actions.  *Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 401 (5th Cir. 2009).  Even if Adaptix were forced to file multiple lawsuits against each of AT&T and Verizon, these elements of res judicata still would be satisfied.

### 3.      There Is No Temporal Limitation on Res Judicata.

Third, Adaptix argues that there is a temporal limitation on the scope of res judicata, such that final judgment in the first suit does not preclude a patentee from bringing a second suit to recover for alleged infringement occurring after the final judgment in the first suit.  Adaptix's argument fails on two levels.

Foremost, Adaptix's objection fails on the facts.  Adaptix leaves out the critical fact that it filed its California and Texas actions around the same time (and in the same place as well—in Texas, before some of the suits were transferred to California).  Thus, Judge Craven found that: "[i]f even for the simple reason that the cases were filed around the same time and were proceeding simultaneously, the Court cannot say Adaptix accuses new acts of infringement, i.e., post-final judgment acts in these cases."  *See* R&R at 36 (citation and quotation marks omitted). Adaptix does not dispute this point.

Moreover, Adaptix is wrong on the law.  Res judicata bars any subsequent assertion of a patent against a party or its privies when the devices in the second suit are "essentially the same" as the devices in the first suit.  *Foster v. Hallco Mfg. Co.*, 947 F.2d 469, 479–80 (Fed. Cir. 1991); *Nystrom v. Trex Co., Inc.*, 580 F.3d 1281, 1285 (Fed. Cir. 2009).  Devices are "essentially the same" even if there are genuine differences between the devices, so long as those differences are not relevant to the infringement inquiry; "[c]olorable changes in an infringing device or changes unrelated to the limitations in the claim of the patent would not present a new cause of action." *Foster*, 947 F.2d at 480.  Here, Adaptix does not dispute that the 4G LTE devices accused in the California and Texas actions are "essentially the same."

As outlined in Defendants' Motion for Summary Judgment, the Federal Circuit's opinion in *Nystrom v. Trex Co., Inc.*, is instructive.  There, plaintiff Ron Nystrom held a patent on an outdoor wood-flooring board shaped to shed water from its upper surface.  *Nystrom*, 580 F.3d at

1282.  In 2001, Nystrom sued Trex, a decking manufacturer, alleging that Trex's first-generation wood-composite boards infringed Nystrom's patents.  *Id.* at 1283.  Nystrom alleged literal infringement and, after receiving an unfavorable claim construction ruling, conceded non-infringement based on that ruling.  *Id.* at 1284.  The Federal Circuit reversed the claim construction in part; on remand, Nystrom tried to argue infringement by equivalents.  *Id.*  The district court held that Nystrom had waived that argument, and the Federal Circuit affirmed.  *Id.*

After the completion of the first case, Nystrom filed a second suit against Trex and added, for the first time, two of Trex's distributors as defendants.  *Id.*  Nystrom alleged that Trex's second-generation products infringed his patent by equivalents.  *Id.*  Nystrom also argued that these second-generation products could not have been included in the first suit because they reached the market after judgment was entered in the first case.  *See* 2009 WL 1208038 (Fed. Cir. Apr. 16, 2009), Nystrom's Reply Brief at 7 (arguing that "the Trex II products could not possibly have been raised in the prior action" because "the Trex II products were not introduced until at least October of 2003, a year after final judgment of non-infringement was entered on the Trex I products"); *see also id.* at 2.  The district court denied Trex's motion for summary judgment based on res judicata but granted it on other grounds.  *Nystrom*, 580 F.3d at 1283.

The Federal Circuit held that the district court should have granted summary judgment based on res judicata.  The court explained, "[w]here an accused infringer has prevailed in an infringement suit, 'the accused devices have the status of noninfringements, and the defendant acquires the status of a noninfringer to that extent.'"  *Id.* at 1285 (quoting *Young Eng'rs, Inc. v. U.S. Int'l Trade Comm'n*, 721 F.2d 1305, 1316 (Fed. Cir. 1983)).  The court noted that while the second-generation Trex boards were materially different in certain respects, the new boards were unchanged as to the claim limitations at issue in the first suit.  *Id.*  The court held that under such circumstances, Nystrom was "attempting to prove infringement of the same claim limitations as to the same features of the accused devices" and that, therefore, "this case presents the exact situation that res judicata seeks to prevent."  *Id.* at 1286.  Significantly, the fact that the second-generation boards were manufactured after the final judgment in the first case did not affect the

8

court's analysis: the only relevant inquiry was whether the new, post-judgment products were "essentially the same" as those in the first suit. *Id.* at 1284–86.

Thus, res judicata precludes a later lawsuit on the same patent against a defendant based on products that are "essentially the same" as those in the previous suit, regardless of whether those products were made before or after the judgment in the first suit. In that regard, there is a conflict between *Foster* and *Nystrom* and two recent three-judge panel Federal Circuit opinions, *Aspex* and *Brain Life*.[3]   However, because *Aspex* and *Brain Life* conflict with the earlier Federal Circuit precedent, they are not controlling. Importantly, three-judge panels of the Federal Circuit are "without power to reconsider the holding" of a previous case; "[a] reversal of that holding would have to be through an en banc proceeding in [the Federal Circuit], Supreme Court review, or through petitioning the U.S. Congress to change the patent statute." *Jacobs Wind Elec. Co. v. Florida Dep't of Transp.*, 919 F.2d 726, 728 (Fed. Cir. 1990), *superseded on other grounds by* Pub. L. 102-560; *see also Newell Companies, Inc. v. Kenney Mfg. Co.*, 864 F.2d 757, 765 (Fed. Cir. 1988) ("Where there is direct conflict, the precedential decision is the first."). This conflict was recognized in a recent district court case and, given the foregoing rules, the court followed the *Foster* line of cases. *See Mentor Graphics Corp. v. EVE-USA, Inc.*, No. 3:10-CV-954-MO, 2014 WL 2533336, at *1 (D. Or. June 4, 2014) ("[T]he *Foster* line of cases cannot be reconciled with *Aspex* and *Brain Life*. Because one three-judge panel cannot overrule another, *Foster* controls until the Federal Circuit sitting *en banc* says otherwise.") (citations omitted).

For all of these reasons, Judge Craven correctly recommended that res judicata bars Adaptix's claims against AT&T and Verizon.

### B.   JUDGE CRAVEN CORRECTLY RECOMMENDED THAT THE KESSLER DOCTRINE BARS ADAPTIX'S CLAIMS AGAINST AT&T AND VERIZON.

The R&R correctly determined that the *Kessler* doctrine independently bars Adaptix's claims against the carriers. *See* R&R at 36-42. Adaptix raises a single objection to the R&R's

---

[3] Although *Brain Life* conflicts in its reasoning with *Foster* and *Nystrom*, it concurs in its result—*i.e.*, the losing plaintiff cannot endlessly refile suits against the same defendant.

*Kessler* analysis: "The R&R committed legal error in holding irrelevant the *reason* why Adaptix failed to prevail [in the California cases]."  Obj. at 7 (emphasis in original).  Contrary to Adaptix's argument, the R&R specifically discussed the reasons why Adaptix lost in California and explained why those reasons, under controlling case law, compel the conclusion that the *Kessler* doctrine bars Adaptix's claims here.  *See* R&R at 36-42.  As Judge Craven explained the "reason" Adaptix lost on summary judgment in California is because no reasonable jury could find that AT&T or Verizon performed the steps of the asserted method claims.  *See, e.g.*, -1776, Dkt. 405 at 6 (granting summary judgment because Adaptix failed to "present evidence that the accused handsets were used to perform at least one step of a claimed method by an individual acting for Defendants, or by an individual 'controlled' by Defendants."); *see* R&R at 36-37 (The bar allows "an adjudged *non-infringer* to avoid repeated harassment for continuing its business as usual post-judgment in a patent action where circumstances justify that result.") (quoting *Brain Life*, 746 F.3d at 1056) (emphasis in original).  The R&R then analyzed and explained why four separate cases, including Supreme Court, Federal Circuit, and district court authority, compel this result.  R&R at 41-42; *see also id.* at 36-39 (addressing *Kessler v. Eldred*, 206 U.S. 285 (1907)); *Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045, 1058 (Fed. Cir. 2014); *Molinaro v. Am. Tel. & Tel. Co.*, 460 F.Supp. 673, 676 (E.D. Pa. 1978); and *SpeedTrack, Inc. v. Office Depot, Inc.*, 2014 WL 1813292, *8-9 (N.D. Cal. May 6, 2014)).[4]

 Adaptix's analysis of the case law is selective and misleading.  Adaptix entirely ignores the *SpeedTrack* decision which holds that new infringement theories involving the same, already-asserted claims are barred by the *Kessler* doctrine.  2014 WL 1813292 at *9.

 Adaptix also fails to distinguish *Molinaro*, which held that "the applicability of the

---

[4] Further, the R&R conservatively applied the *Kessler* doctrine to bar only the asserted method claims, even though the doctrine would apply to apparatus claims as well.  *See* R&R at 40 ("Importantly, the only asserted claims in these cases are method claims.").  The R&R correctly recognized that "[i]nfringement of a method claim requires a person to have practiced all steps of the claimed method" and stated that "the relevant question is not whether there is an infringing handset but whether the Carrier Defendants performed all of the steps of Adaptix's asserted method claims."  R&R at 40.

Kessler doctrine is not altered by the fact that the infringement question in the instant case was not actually litigated in the [prior] suit." 460 F. Supp. at 675.  Adaptix argues in a footnote that *Molinaro* should not apply because in that case the previous infringement suit was dismissed as a discovery sanction.  Obj. at 8 n. 8.  But that only provides more support for Defendants' position.  If *Kessler* applies where there has been *no finding regarding infringement*, it applies with more force here, where the carriers are adjudged non-infringers.

Adaptix mischaracterizes *Kessler*, attempting to narrowly confine its holding to instances where an "accused product did not have the infringing features."  Obj. at 7.  However, there is no support in *Kessler* for such a narrow interpretation.  In *Kessler*, Eldred sued his competitor Kessler for infringement of a patent related to an electric lamp lighter.  Eldred sued Kessler first in Indiana, where the court found that Kessler did not infringe.  206 U.S. at 258–86.  Eldred then sued one of Kessler's customers in New York, and Kessler intervened to indemnify his customer. *Id.* at 286.  Kessler also filed suit in Illinois to enjoin Eldred from further infringement suits based on Kessler's lighter.  *Id.* The Supreme Court held that Kessler's judgment of non-infringement was a final resolution that Kessler had the right to sell and use his lighter:  "This judgment, whether it proceeds upon good reasons or upon bad reasons, whether it was right or wrong, settled finally and everywhere, and so far as Eldred . . . was concerned, that Kessler had the right to manufacture, use, and sell the electric cigar lighter before the court." *Id.* at 288.

As in *Kessler*, the judgment in the California cases was a final resolution that AT&T and Verizon can continue their activities involving 4G LTE devices without infringing the asserted patents.  It follows as a matter of logic that AT&T's and Verizon's customers are similarly free to continue using those same 4G LTE devices without fear of infringement lawsuits.  Adaptix's limited reading of *Kessler* would strip the *Kessler* doctrine of any force.  Adaptix posits the extreme scenario of applying *Kessler* to dismiss a suit against a U.S. retailer "solely because its manufacture and sale of an infringing product had occurred offshore."  Obj. at 7-8.  But such a scenario was not present in *Kessler*, nor does it exist here.

Adaptix also twists the Federal Circuit's decision in *Brain Life*, which does not, as

Adaptix argues, limit the *Kessler* doctrine to situations where the accused products are adjudged to be "missing" a claim limitation.  Indeed, *Brain Life* made clear that the *Kessler* doctrine applies to bar assertion of *method* claims, not just apparatus claims.  *Brain Life,* 746 F.3d at 1058.  The previously vindicated defendant in *Brain Life* was "free to continue engaging in the accused commercial activity as a non-infringer" (*id*. at 1058), and the R&R correctly analogized to *Brain Life* to conclude that "[a]s adjudged noninfringers, Carrier Defendants are free from 'repeated harassment for continuing [their] business as usual post-final judgment.'"  R&R at 42 (quoting *Brain Life* at 1056).

Adaptix similarly mischaracterizes *Goodyear*[5] and *Shoom*.[6]  Obj. at 7-8.

Having received a judgment of noninfringement in the California cases, the carriers are "adjudged *non-infringer[s]*" and must be allowed "to avoid repeated harassment for continuing [their] business as usual."  *Brain Life*, 746 F.3d at 1056.

For all of these reasons, Judge Craven correctly recommended that the *Kessler* doctrine bars Adaptix's claims against AT&T and Verizon.

### C.   JUDGE CRAVEN CORRECTLY RECOMMENDED THAT COLLATERAL ESTOPPEL BARS ADAPTIX FROM RELITIGATING DIRECT INFRINGEMENT OF THE METHOD CLAIMS AGAINST ALL DEFENDANTS.

In her R&R, Judge Craven found that "issue preclusion bars Adaptix from arguing in the present case the following:  (1) any defendant directly infringes the method claims by selling

---

[5] In *Goodyear*, defendant Goodyear prevailed on invalidity.  *Rubber Tire Wheel Co. v. Goodyear Tire & Rubber Co.*, 232 U.S. 413, 414 (1914).  Even though the invalidity finding was later abrogated, the Supreme Court explained that the *Kessler* doctrine barred the patent holder from bringing later actions against Goodyear's customers for use of tires purchased from Goodyear. *Id.* at 418.  The *Kessler* doctrine thus applied and protected Goodyear's customers even though the previous judgment was based on invalidity, not infringement.

[6] For *Shoom*, Adaptix fails to mention that the party who previously obtained a judgment of non-infringement (Shoom) *was* granted relief by the court in the form of an injunction prohibiting the patentee from ever suing Shoom again.  *Shoom*, 2011 WL 4595212, at *4.  Regarding Shoom's customers, the court did not say that the *Kessler* doctrine was inapplicable.  Rather, the court left the customer issues for another day.

LTE devices (Adaptix's *SiRF* theory); and (2) AT&T and Verizon directly infringe the method claims by controlling the use of their respective customers' LTE devices." R&R, at 18; *see id.* at 9-18.  Rather than object in the body of its brief, Adaptix merely notes via footnote that "although Adaptix objects to the R&R's finding of issue preclusion, Adaptix will simply rely on its prior briefing as to why."  Obj. at 1 n.3 (citations omitted).  This passing reference does not raise a valid objection for three reasons.  First, this does not satisfy Rule 72's requirement that objections be "specific."  Fed. R. Civ. P. 72(b)(2).[7]  Second, an issue raised solely in a footnote is not joined for resolution.[8]  Third, Adaptix may not incorporate its issue preclusion briefing by reference, as doing so violates the Court's order that briefing be limited to 15 pages (already extended from the usual 8 pages).  *See* Dkt. 367.  In any event, Judge Craven's issue preclusion recommendation is correct for the reasons explained in her R&R.  *See* R&R at 9-18.

> **D.     JUDGE CRAVEN CORRECTLY RECOMMENDED THAT—BECAUSE THE CARRIERS AND THEIR CUSTOMERS DO NOT DIRECTLY INFRINGE—LG AND PANTECH CANNOT CONTRIBUTORILY INFRINGE.**

As Judge Craven recognized (R&R at 42), "it is well settled that there can be no inducement or contributory infringement absent an underlying direct infringement."  *Novartis Pharm. Corp. v. Eon Labs Mfg.*, 363 F.3d 1306, 1308 (Fed. Cir. 2004).  Here, as Judge Craven correctly found, there is no underlying direct infringement—and thus no possible contributory infringement by LG and Pantech—for three reasons (R&R at 42-44).

First, res judicata, the *Kessler* Doctrine, and collateral estoppel each preclude a finding of

---

[7] *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1420-21 (5th Cir. 1996) (en banc); *Mario v. P&C Food Markets, Inc.*, 313 F.3d 758, 766 (2nd Cir. 2002) ("The only reference made to the Title VII claim was one sentence on the last page of his objections … [A] bare statement, devoid of any reference to specific findings or recommendations to which he objected and why, and unsupported by legal authority, was not sufficient to preserve the Title VII claim.").

[8] *Bridas SAPIC v. Government of Turkmenistan*, 345 F. 3d 347, 356 n.7 (5th Cir. 2003) ("Arguments that are insufficiently addressed in the body of the brief, however, are waived."); *Lindquist v. City of Pasadena Texas*, 669 F. 3d 225, 240 (5th Cir. 2012) (statement in footnote did not preserve argument).

direct infringement by AT&T or Verizon, for the reasons explained above.  *See supra*.

Second,  AT&T's and Verizon's customers enjoy the res judicata effect of the California cases, because they are in privity with AT&T and Verizon for the purposes of res judicata, as purchasers of the very products that AT&T and Verizon are permitted to sell.  *Russell v. SunAmerica Sec., Inc.*, 962 F.2d 1169, 1173 (5th Cir. 1992) ("A non-party defendant can assert res judicata so long as it is in 'privity' with the named defendant.").  In the res judicata context, "'[p]rivity' is recognized as a broad concept, which requires [the court] to look to the surrounding circumstances to determine whether claim preclusion is justified." *Id.*  Parties that are sufficiently related to qualify for claim preclusion are in privity.  *Id.* at 1174.

"One situation in which parties have frequently been held to be in privity is when they hold successive interests in the same property."  *Int'l Nutrition Co. v. Horphag Research, Ltd.*, 220 F.3d 1325, 1329 (Fed. Cir. 2000).  Thus, in *Nystrom*, the Federal Circuit extended the benefits of res judicata to the distributors of the party that had litigated and won the prior suit. 580 F.3d at 1284-86.  In *Russell*, the Fifth Circuit found that the purchaser of a corporation's assets could assert claim preclusion based on a prior judgment obtained by the corporation.  962 F.2d at 1173-76; *see also Guerro v. Katzen*, 774 F.2d 506, 509 (D.C. Cir. 1985) ("A successor to an interest in property is in privity with its prior owner and may rely on a previous judgment regarding that interest.").  Here, likewise, the carriers' customers enjoy privity with the carriers and thus by extension the res judicata effect of the "no direct infringement" finding.

Adaptix, in its Objections, argues that "on the issue of whether the products themselves infringe … the California court ruled *against* the Carrier Defendants, holding a reasonable jury could find that the products infringe."  Obj. at 10 (emphasis in original).  But Adaptix's argument is nonsensical.  Put aside the fact that Adaptix cites a denial of a summary judgment motion, which is not a ruling on the merits but, rather, a decision to put a question to the jury. Adaptix sued AT&T and Verizon, not "the products," which are not actors and cannot be liable for infringement of Adaptix's method claims.  There was no ruling against AT&T, Verizon, or the products themselves; nobody lost but Adaptix.  Indeed, without privity, the carriers would be

judicially determined to be free to sell 4G LTE devices, but then, nonsensically, the purchasers could be sued for buying and using the very devices that the carriers won the right to sell.

Third, the *Kessler* Doctrine extends to customers.  In *Kessler*, the Supreme Court held that it was "unnecessary to inquire" whether the judgment between Kessler and Eldred created a separate right for the customer because "it is Kessler's right that those customers should, in respect of the articles before the court in the previous judgment, be let alone by Eldred, and it is Eldred's duty to let them alone." *Id.* at 288-89.  Similarly, the *Brain Life* court held that the *Kessler* Doctrine protects against allegations of infringement "even when the acts of infringement occurred post-final judgment and even when it was third-parties who allegedly engaged in those acts of infringement," and that this right "attaches to [the underlying] product— to a particular thing—as an article of lawful commerce." 746 F.3d at 1056.  And the *SpeedTrack* court emphasized that the plaintiff lost the right to assert the patent-in-suit against any customers of the previous defendant.  2014 WL 1813292, at *9.  Thus, as Judge Craven correctly recommended, the *Kessler* Doctrine also precludes any finding against AT&T's and Verizon's customers for alleged infringement of the patents-in-suit.

Adaptix argues that "the *Kessler* doctrine does not even preclude a *suit* against the Carriers' customers for infringement" because of "AT&T and Verizon's own admissions."  Obj. at 11 (emphasis in original).  Yet "a suit" is precisely what *Kessler* did and does preclude.  If a party defeats a claim of infringement, the very purpose of the *Kessler* doctrine is to extend that win down the distribution-sales chain.  Further, the notion that the carriers "admi[tted]" that the end-users infringe is wildly inaccurate; rather, the statement Adaptix cites is one in which the carriers argue that *they* do not infringe, not that the customers do.

Accordingly, without direct infringement by the carriers and their customers, there can be no contributory infringement by LG and Pantech.

## V.    CONCLUSION

For the foregoing reasons, the Court should deny Adaptix's Objections and adopt Judge Craven's Report & Recommendations.

Dated: June 15, 2015                    ORRICK, HERRINGTON & SUTCLIFFE LLP
                                        By:  */s/ Alex V. Chachkes*

        Alex V. Chachkes, State Bar No. NYS 3035078
        ORRICK, HERRINGTON & SUTCLIFFE, LLP
        51 West 52nd Street
        New York, NY 10019-6142
        Telephone:  (212) 506-5000
        Facsimile: (212) 506-5151
        Email: achachkes@orrick.com

        Travis Jensen, CA Bar No. 259925
        ORRICK, HERRINGTON & SUTCLIFFE LLP
        1000 Marsh Road
        Menlo Park, CA 94025-1015
        Telephone: (650) 614-7400
        Facsimile: (650) 614-7401
        Email: tjensen@orrick.com

        ATTORNEYS FOR DEFENDANTS AT&T
        MOBILITY LLC, LG ELECTRONICS, INC.,
        AND LG ELECTRONICS USA, INC.

    By:  : */s/ Geoffrey M. Godfrey*

Mark D. Flanagan
Robert M. Galvin
Geoffrey M. Godfrey
Cortney C. Hoecherl
S. Dennis Wang
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
Phone: (650) 858-6000
Fax: (650) 858-6100
mark.flanagan@wilmerhale.com
robert.galvin@wilmerhale.com
geoff.godfrey@wilmerhale.com
cortney.hoecherl@wilmerhale.com

Michael E. Jones
John F. Bufe
Allen F. Gardner
Patrick C. Clutter, IV
POTTER MINTON, P.C.
110 North College, Suite 500
Tyler, TX 75710
Phone: (903) 597-8311
mikejones@potterminton.com
patrickclutter@potterminton.com

ATTORNEYS FOR DEFENDANT AND
COUNTERCLAIM-PLAINTIFF CELLCO
PARTNERSHIP D/B/A VERIZON WIRELESS

By:  */s/Hae-Chan Park*
Hae-Chan Park
Young Sun Kwon
**HC Park & Associates PLC**
1894 Preston White Drive
Reston, VA  20191
Tel: (703) 544-9202
Fax: (703) 288-5139
Hpark@park-law.com
ykwon@park-law.com

Melissa Richards Smith
**Gillam & Smith, LLP**
303 South Washington Avenue
Marshall, TX  75670
Tel: (903) 934-8450
Fax: (903) 934-9257

ATTORNEYS FOR DEFENDANT AND COUNTERCLAIM-
PLAINTIFF PANTECH WIRELESS, INC.

17

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have

consented to electronic service are being served with a copy of this document via email on June

15, 2015.

Dated:  June 15, 2015                                   */s/ Alex V. Chachkes*_____

                                                                     Alex V. Chackes